NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN WATKINS,  Plaintiff,  v.  ATTORNEY GENERAL OF NEW JERSEY, et al.,  Defendants. | Civil Action No.: 06-1391 (JLL)  OPINION |

**LINARES**, District Judge.

This matters comes before the Court on a motion for summary judgment filed by Defendants Officer Raymond Weber, Officer Joseph Stetzle, and Officer John Traynor (collectively the "Officer Defendants"). Mr. Watkins brings claims against the Officer Defendants for violation of his constitutional rights pursuant to 42 U.S.C. § 1983. The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, the Officer Defendants' motion is granted.

**I.  BACKGROUND**[1]

"On November 29, 2004, Raymond Weber, a police officer who works in the Narcotics Division of the Jersey City Police Department, set up surveillance of 320 Duncan Avenue, A.

---

[1] Mr. Watkins has not submitted a responsive statement of facts as required by Local Civil Rule 56.1. However, because of his pro se status, the Court has carefully reviewed his papers submitted in opposition to try to identify the facts which Mr. Watkins contests.

Housing Complex." (Br. in Supp. of Defs' Mot. for Summ. J. [hereinafter "Defs.' Br."], Fact Stmt. ¶ 1.) Officer Weber chose this location based on past complaints of drug dealing and prior arrests at the location. (Id., at ¶ 3.) Officer Weber testified at Mr. Watkins's criminal trial that Mr. Watkins was not an initial target of the surveillance. (Id., at ¶ 27.) Officers Stetzle and Traynor were in a perimeter unit assisting Officer Weber. (Id., at ¶ 1.)

From his surveillance position, Officer Weber observed two men talking by the steps of the complex, "one [was] . . . described as wearing a black jacket and a yellow tee shirt [and] was later identified as Kevin Watkins, the Plaintiff in this case, and one [was] . . . described as wearing a camouflage jacket and camouflage baseball cap [and] was later identified as Raheem Tramel." (Id., at ¶ 5.) Officer Weber testified that he subsequently observed Mr. Watkins and Mr. Tramel engage with third parties in two separate suspected narcotics transactions. (Id., at ¶¶ 6-12, 15-17.) In both instances, Officer Weber observed that Mr. Tramel spoke first to the third party and then gestured to Mr. Watkins, who accepted money in exchange for an object. (Id.) After each transaction, Officer Weber "alerted his perimeter units that a narcotics transaction took place." (Id., at ¶¶ 11, 18.) After the second transaction, "Officer Weber alerted his perimeter units to come around and stop Mr. Watkins and Mr. Tramel." (Id., at ¶ 19.) As soon as the perimeter unit vehicles pulled up, Officer Weber testified that he saw Mr. Watkins and Mr. Tramel run into the building. (Id., at ¶ 20.)

Officers Stetzle and Traynor went to the rear of the building to prevent anyone from running out. Officer Stetzle then ran into the back of the building and collided with Mr. Watkins in the hallway. (Id., at ¶¶ 21-22.) Officer Stetzle testified that he recognized Mr. Watkins from the description given by Officer Weber. (Id., at ¶ 23.) He then proceeded to "put [Mr.] Watkins

in a bear hug and [take] him to the ground." (Id.)  He held Mr. Watkins down until Officer Traynor was able to assist in handcuffing him.  (Id., at 24.)  Officers Stetzle and Traynor then patted Mr. Watkins down and retrieved a gun from his pocket.  (Id., at ¶ 25.)  Mr. Watkins was brought to the Narcotics headquarters where he was searched by Police Officer Stetzle[, who] recovered a clear sandwich bag containing suspected cocaine and heroin."  (Id., at 26.)

Mr. Watkins asserts that his intake photograph demonstrates that the clothes he was wearing did not match the description given by Officer Weber to the perimeter units.  In response to these assertions by Mr. Watkins, a pro se litigant, this Court requested that the Officer Defendants provide a copy of the testimony of Lieutenant Jason Dembrowski, who testified at trial regarding the photograph.  Lieutenant Dembrowski testified that it was fair to say that the clothes shown in Mr. Watkins's intake photograph were the clothes Mr. Watkins was wearing when he was brought in to the station by the officers.  (See Jan. 2007 Trial Transcript of Lieutenant Dembrowski, Tr. 125: 13-21.)  In response to questioning by Mr. Watkins's attorney, who called him as a witness, he testified that the photo shows Mr. Watkins wearing what "[l]ooks like a black and gray camouflage fleece jacket."  (Id., at 125:22-126:1.)  On cross by the state, Lieutenant Dembrowski was asked if he "would . . . call the jacket a dark color."  (Id., at 127:14.)  He answered yes.  (Id., at 127:14.)  He further testified that the photo appeared to show that Mr. Watkins was wearing a yellow shirt underneath the jacket.  (Id., at 15-18.)

## II.    LEGAL STANDARD

A court shall grant summary judgment under Rule 59(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### III.   DISCUSSION

"[Section] 1983 provides a cause of action for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). Here, Mr. Watkins argues that his equal protection and Fourth Amendment rights were violated as a result of the arrest by the Officer Defendants.

#### A.   Claim of an Equal Protection Violation

In his Complaint, Mr. Watkins claims that he was targeted for arrest based on racial animus. "To prevail on an equal protection claim in the racial profiling context, [a plaintiff] would have to show that the challenged law enforcement practice had a discriminatory effect and was motivated by a discriminatory purpose." Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002). Furthermore, "[t]o prove discriminatory effect, [a plaintiff must] show that [he] is a member of a protected class and that [he] was treated differently from similarly situated

individuals in an unprotected class." Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002). A plaintiff may prove discriminatory effect "by naming similarly situated members of an unprotected class who were not selected for the same search or, in some cases, by submitting statistical evidence of bias." Id.

Officer Weber testified that Mr. Watkins was not an initial target of the surveillance, and only became a focus based on the observed suspected drug transactions. Mr. Watkins has produced no evidence of bias based on racial animus to counter this testimony or the inferences from the facts in the record, even when viewed in the light most favorable to him. He does not offer even one comparative example of differential treatment. In fact, his opposition, although not very clear, appears to focus solely on his Fourth Amendment claim. On summary judgment, a party may not merely rest on it allegations; it must come forward with evidence to support its position, once challenged. See N.L.R.B. v. FES, 301 F.3d 83, 95 (3d Cir. 2002) (unsupported or conclusory statements are inadequate proof on summary judgment). Mr. Watkins has not met this burden. Summary judgment in favor of the Officer Defendants is granted on this claim.

### B. Claim of a Fourth Amendment Violation

Next, Mr. Watkins argues that the Officer Defendants did not have probable cause to arrest and search him. Specifically, he argues that Officers Stetzle and Traynor did not observe the transaction, that they had no opportunity to view him before tackling him, and that the clothes he was wearing did not match the description, if any, given by Officer Weber. Thus, he argues that Officers Stetzle and Traynor did not have probable cause to arrest him. He does not appear to argue that Officer Weber personally would not have had probable cause to arrest him based on his surveillance observations. Instead, Mr. Watkins focuses on whether Officers Stetzle and

Traynor had a reasonable basis to suspect, when they seized and the searched him, that he was the appropriate suspect identified by Officer Weber.  Officer Weber testified that Mr. Watkins was wearing a black jacket and a yellow tee shirt.  Mr. Watkins argues that such a description is too vague and non-specific to raise Officers Stetzle's and Traynor's belief of identify above the speculative level.  He also argues that his intake photograph, as testified to by Lieutenant Dembrowski, demonstrates that he did not match the description given.

To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).  "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue."  Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000).  It "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005). Additionally, the issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate."  Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir.1984); see also Wilson, 212 F.3d at 786.

The Officer Defendants argue that they did have probable cause to arrest Mr. Watkins based on Officer Weber's observations and the description of Mr. Watkins given by Officer Weber to Officers Stetzle and Traynor.  They argue that, under the circumstances, it was reasonable for Officers Stetzle and Traynor to believe that Mr. Watkins was one of the people suspected by Officer Weber of dealing drugs.  Additionally, they argue that their actions were objectively reasonable and that, as such, they are entitled to qualified immunity.

Qualified immunity shields state officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Bayer v. Monroe County Children & Youth Servs., 577 F.3d 186, 191 (3d Cir. 2009). Qualified immunity is not simply a defense to liability; it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The Supreme Court has recognized that "it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

A qualified immunity analysis involves a two-step process. The court must ask "whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." Bayer, 577 F.3d at 191 (discussing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The court also must ask whether the right asserted was "clearly established." Id. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Pearson, 129 S. Ct. at 822 (internal quotations omitted).

In support of his Fourth Amendment claim, Mr. Watkins relies primarily on arguments related to his clothing. He argues, in essence, that a clothing description of a black jacket and a yellow tee-shirt is to vague to supply probable cause for the officers' actions. This argument has no merit. General clothing descriptions, in light of the circumstances as a whole, are often used in arresting suspects, particularly fleeing suspects, as was the case here. His second argument, however, has more weight. He argues that, even if such a clothing description may be sufficient in light of the other facts, the facts here, particularly the trial testimony regarding his intake

photograph, contradicts the Officer Defendants assertions that he met the description given by Officer Weber.  He argues that without a reasonable description, the officers were acting on nothing more than a "subjective hunch" in seizing and then searching him.  (Watkins Opp'n, CM/ECF No. 59, at 6.)

As noted above, based on Mr. Watkins's arguments, the Court requested additional information from the Officer Defendants.  Lieutenant Dembrowski testified at Mr. Watkins's trial that it was fair to say that the clothing shown in the intake photograph were the clothes Mr. Watkins was wearing when he was brought in to the station by the officers.  (See Jan. 2007 Trial Transcript of Lieutenant Dembrowski, Tr. 125: 13-21.)  He testified that the photo shows Mr. Watkins wearing what "[l]ooks like a black and gray camouflage fleece jacket." (Id., at 125:22-126:1.)  Mr. Watkins appears to believe that this contradicts Officer's Weber description of a black jacket and a yellow tee shirt.  On cross by the state, Lieutenant Dembrowski was asked if he "would . . . call the jacket a dark color." (Id., at 127:14.)  He answered yes.  (Id., at 127:14.)  He further testified that the photo appeared to show that Mr. Watkins was wearing a yellow shirt underneath the jacket.  (Id., at 15-18.)

The Court does not find that Lieutenant Dembrowski's testimony creates a genuine issue of material fact as to whether Officers Stetzle and Traynor reasonably believed that Mr. Watkins was one of the fleeing suspects based on Officer Weber's description.  Whether the jacket worn by Mr. Watkins on the day of his arrest was in fact, on close inspection, a black and gray camouflage or a solid black color, especially when combined with a yellow tee-shirt and the other facts, does not change this Court's opinion that it was reasonable for Officers Stetzle and Traynor to believe, in the heat of the moment, that Mr. Watkins was one of the fleeing suspects.

Also, once reasonably seized by the officers based on that information, the law is clear that it was permissible for the officers to pat him down. See, e.g., United States v. Myers, 308 F.3d 251, 266 (3d Cir. 2002).

Mr. Watkins has not provided any evidence disputing Officer Weber's testimony regarding his personal observations of the alleged narcotics transactions. These observations clearly provided probable cause for Mr. Watkins's arrest by Officer Weber. Officer Weber's relay of information to the perimeter units of the suspected narcotics transaction activity, his description of the suspects, the fleeing of the suspects through the building, and Officer Stetzle's collision with a male generally matching the description given by Officer Weber reasonably provided Officers Stetzle and Traynor with probable cause to seize and then search Mr. Watkins. Mr. Watkins has submitted no evidence, beyond speculation, to dispute these findings. Additionally, even if the officers had been wrong that Mr. Watkins was the correct suspect, given the totality of the circumstances, which involved a chase of fleeing suspects, this Court finds that the officers actions were reasonable and are entitled to qualified immunity. Therefore, summary judgment in favor of the Officer Defendants is also granted on this claim.

**IV.   CONCLUSION**

For the foregoing reasons, the Officer Defendants' motion for summary judgment is granted. An appropriate Order accompanies this Opinion.

DATED: April 8, 2010      /s/ Jose L. Linares
                           JOSE L. LINARES
                           UNITED STATES DISTRICT JUDGE